Dated ____October 21, 1975.____

ESCO MANUFACTURING CO., aka J. Hofert Co., Appellant,

v.

The UNITED STATES, Appellee.

Customs Appeal No. 75–27.

United States Court of Customs and Patent Appeals.

Feb. 26, 1976.

Robert Glenn White, Glad, Tuttle & White, Los Angeles, Cal., attorney of record, for appellant.

Rex E. Lee, Asst. Atty. Gen., Washington, D. C., Andrew P. Vance, Chief, Customs Section, Max F. Schutzman, New York City, for the United States.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

RICH, Judge.

This appeal is from the judgment of the United States Customs Court, 74 Cust.Ct. 57, C.D. 4585, 393 F.Supp. 608 (1975), sustaining the classification of certain electric filament lamps, imported from Japan, as "Christmas-tree lamps" under TSUS item 686.30. We affirm.

The articles, invoiced as C–9¼ type, 120 volt "Christmas Light Bulbs" or "Christmas Bulbs," are small, 10-watt, intermediate-base bulbs, specifically designed to produce colored light. These bulbs (hereafter referred to as "C–9"

bulbs or lamps) are primarily sold during the Christmas season.

### Statutory Provisions

The pertinent portions of the tariff schedules are:

> Electric filament lamps and electric discharge lamps, including ultra-violet and infra-red lamps and photo-flash lamps; electric luminescent lamps; and arc lamps:
>
> Filament lamps:
>
> 686.30      Christmas-tree lamps * * *
>
> \*   \*   \*   \*   \*   \*
>
>      Other:
>
> \*   \*   \*   \*   \*   \*
>
> 686.90          Designed for operating at 100 volts or more * * *

### Proceedings Below

The imported C–9 lamps were classified on entry as "Christmas-tree lamps," under TSUS item 686.30. Appellant pleaded that they are properly classifiable under TSUS item 686.90, as modified by Presidential Proclamation, T.D. 68–9, as "other electric filament lamps, designed for operating at 100 volts or more." In pleading erroneous classification under item 686.30, appellant alleged said item to be a use provision governed by TSUS General Interpretative Rule 10(e)(i).

The Customs Court found that appellant had failed to overcome the presumption that the imported C–9 bulbs were properly classified. Considering item 686.30 as if it were governed by General Interpretative Rule 10(e)(i), i. e., as it would be if it were a classification "controlled by use (other than actual use)," the Customs Court held that appellant had not established "that the *class* or *kind* of merchandise imported was not chiefly used on Christmas trees." Pointing out that the slightly smaller C–7 lamp was concededly a "Christmas-tree lamp" within the meaning of item 686.-30, the court found the C–9 lamp to be of the same class or kind. In so finding, the court noted that both lamps "were marketed and sold in the same manner during the Christmas season and through the same channels of distribution," that the predominant use by far for both "is

in Christmas lighting strings for decorative purposes at Christmastime," that both "belong to the same product line and were displayed, advertised and uniformly referred to in the same manner," that both were constructed in the same manner, except for size, and that the decorative effect of both "is the same." As a consequence of its finding, the court stated that "it was incumbent upon plaintiff to establish that the predominant use of the class as a whole, i. e., C–7 and C–9 lamps combined, was not for the decoration of Christmas trees," and concluded that it had not done so since "on this score, plaintiff presented no evidence whatever." It stated further that "even though it were to be assumed that plaintiff had proven that the C–9 lamps *per se* were not chiefly used to decorate Christmas trees, this would still not be sufficient."

The court next considered the question before it on the basis that item 686.30 was not a so-called "classification by use," noting that the Customs Court had earlier indicated that item to be an eo nomine provision in *Mobilite, Inc. v. United States,* 70 Cust.Ct. 359, C.R.D. 73–11, 358 F.Supp. 267 (1973). The court, referring to testimony by appellant's witnesses, stated: "The fact, however, that C–7 lamps, as well as C–9 lamps, were not usually referred to as Christmas-tree lamps does not mean that they were not commonly *known* as such." The court pointed to a 1939 report of the Tariff Commission entitled *Incandescent Electric Lamps* (T.C.Rept. No. 133, 2d series) which, in listing some representative flange-seal, miniature lamps, included "the larger Christmas-tree lamps designed for outdoor use." The court concluded that the Commission was referring "solely to the C–9 bulb [for] as the record shows, this is the only bulb in the industry that fits the above description."

### Appellant's Argument

Appellant argues that item 686.30 can be considered from only one point of view, as a so-called "classification by use." As to the Customs Court's consideration of the classification as eo nomine, appellant concedes only that it may be an "eo nomine by use" designation, but that even if it is, "the issue is still one of chief use."

Further, appellant argues that the Customs Court did not properly apply General Interpretative Rule 10(e)(i) because it failed to interpret the phrase "class or kind to which the imported articles belong" as being defined by the physical characteristics of the imported article itself. Defining the "class or kind" of article here as "C–9¼ electric filament lamps," appellant argues that "the weight of the evidence establishes * * * that the subject lamps are not chiefly used on Christmas trees," stating that "Of the six witnesses who testified as to observations of the use of the lamps in issue, five were in strong agreement that their predominate use, exceeding all other uses combined, was not on outdoor trees or other vegetation."

### OPINION

We agree with the decision of the Customs Court. The fundamental inquiry is the determination of the meaning of "Christmas-tree lamps" at the time TSUS item 686.30 was enacted. In determining such meaning, it is to be kept in mind that in a tariff statute Congress ordinarily employs terms in their commercial sense. The record here indicates that the term "Christmas-tree lamps" as employed in item 686.30 does include the imported C–9 lamps.

Appellee's witness Lehmann, whom the record shows to be singularly qualified to speak on the subject, testified that, in the lighting industry, there is an article of commerce known as a "Christmas-tree lamp," and that his company (General Electric Co.) has been making such lamps since 1899. He described "Christmas-tree lamps" as follows:

Any one of several small light bulbs designed specifically to produce color. They are low wattage. They are designed to fit into the Christmas tree light sets. They must be compatible— the lamps must be compatible to the sockets and marketed under a specific

Christmas sales plan. They have a filament which is designed to burn extra white hot to give good colors particularly in the blue and green areas, and therefore are shorter life lamps. There are other general purpose lamps, night lights, chandeliers—and so forth.

\*   \*   \*   \*   \*   \*

A Christmas tree lamp is characterized by its shape, size, and the fact that it's primarily colored. The coating on a Christmas lamp is a critical part of its manufacture, whether domestic or overseas. The filament has to be especially designed so it will create colored light through the outer shell. It is a short life lamp, shorter than a standard lamp, and has a smaller than normal base with respect to household lamps and it is used primarily in Christmas tree strings at Christmas time and is marketed by General Electric and other organizations at Christmas time as Christmas lamps.

As to the C–9 lamp itself, Lehmann testified that it was introduced in 1932, that it is known interchangeably as a "Christmas lamp" or "Christmas-tree lamp," and that it is larger than the previously introduced C–6 lamp and the subsequently introduced C–7 lamp. Lehmann's testimony clearly supports the conclusion of the Customs Court that the "larger Christmas-tree lamps" referred to in the 1939 Tariff Commission report were C–9 lamps. Further, it is undisputed that the C–9 lamp is primarily used outdoors and is manufactured with a flange seal, characteristics which the Tariff Commission report mentions as being possessed by the "larger Christmas-tree lamps." It is also not disputed that the imported C–9 lamps are specifically designed to produce color, are of low wattage, have bases smaller than those of ordinary household lamps, and fit into Christmas tree light sets—characteristics which the witness Lehmann testified are possessed by "Christmas-tree lamps." Thus, there is ample support in the record for the view that at least since 1899 the term "Christmas-tree lamp" has referred to a certain article of

commerce, that the C–9 lamp has the characteristics of such article, and has itself been considered to be a "Christmas-tree lamp" since at least 1939. In arguing against this view, appellant states that "there was no provision in the Tariff Act for Christmas-tree lamps until 1962," referring to T.D. 55615, 97 Treas.Dec. 157 (1962), which set out the following provision, carved out of paragraph 229 of the Tariff Act of 1930 by reciprocal trade agreement:

> Incandescent electric-light bulbs and lamps (except miniature Christmas tree) with metal filaments

Contrary to appellant's argument, this provision supports the view that the meaning of the term "Christmas-tree lamp" was the same in 1962, on the eve of the enactment of the TSUS, as it was in 1939, when the Tariff Commission report was published, since the provision refers to Christmas-tree lamps as a type of miniature lamp, just as they were referred to in the 1939 report.

We find it unnecessary to decide whether item 686.30 is a "classification by use" or an eo nomine provision, since we conclude that Congress intended that C–9 lamps, the particular goods at bar, be classified under this item. Where the intent of Congress is apparent, rules of construction may not be employed to narrow, limit, or circumscribe the statute. *Sandoz Chemical Works, Inc. v. United States*, 50 CCPA 31, C.A.D. 815 (1963). To control the result herein by labelling item 686.30 either a "use" or eo nomine provision would generate, not eliminate, ambiguity contrary to the Congressional intent. Appellant's arguments do not suffice to overcome the presumption of correctness attaching to the Government's classification, especially in light of the evidence supporting the classification.

The judgment of the Customs Court is *affirmed.*