**AMELIOTEX, INC., Appellant,**

v.

**The UNITED STATES, Appellee.**

**Appeal No. 77–10.**

United States Court of Customs and Patent Appeals.

Nov. 10, 1977.

Rode & Qualey, New York City, attorneys of record, for appellant; John S. Rode, New York City, of counsel.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., David M. Cohen, Chief, Customs Section, New York City, Bruce M. Mitchell, Washington, D. C., for the United States.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

MILLER, Judge.

This appeal is from the judgment of the United States Customs Court, 426 F.Supp. 556, 77 Cust.Ct. ——, C.D. 4673 (1976), holding that certain elastomeric fibers known as "Sarlane" were properly classified as monofilaments under items 309.03 or 309.06, Tariff Schedules of the United States (TSUS), as modified by T.D. 68–9, depending on the denier of the fiber, rather than grouped filaments under item 309.31, as claimed by appellant. We affirm.

*Background*

Schedule 3, Part 1, TSUS, covers, among other things, textile fibers. Subpart E provides in pertinent part:

Subpart E Headnotes:

.    .    .    .    .    .    .

3. For the purposes of this subpart—

.    .    .    .    .    .

(b) the term "monofilaments" embraces single filaments (including single filaments of laminated construction or produced from two or more filaments fused or bonded together), whether solid or hollow, whether flat, oval, round, or of any other

cross-sectional configuration, which are not over 0.06 inch in maximum cross-sectional dimension;

. . . . . . .

(e) the term "grouped filaments and strips" embraces two or more filaments or strips, as defined in (a), (b), (c), and (d) of this headnote, grouped together with the filaments or strips substantially parallel and not twisted, but 'the term does not include grouped filaments which have been subjected to processes such as twisting and untwisting, false twisting, crimping, and curling, and which are useable as yarns;

. . . . . . .

Monofilaments (in continuous form), with or without twist, whether known as monofils, artificial horsehair, artificial straw, yarns or by any other name:

Not over 150 denier:

. . . . . . .

309.03   Valued over 80 cents per pound . . 35% ad val.

Over 150 denier:

. . . . . . .

309.06   Valued over 85 cents per pound . . 24% ad val.

. . . . . . .

Grouped filaments and strips (in continuous form), whether known as tow, yarns, or by any other name:

Wholly of grouped filaments (except laminated filaments and plexiform filaments):

. . . . . . .

Other:

309.31   Valued over 80 cents per pound . . 14½% ad val.

Sarlane, the trade name for appellant's product, is a spandex [1] fiber used in foundation garments, waistbands, sportswear, and sport hosiery. It is produced by extrusion of a polymeric product through a spinerette followed by passing the individual filaments through an extraction bath to remove solvent. The filaments are then gathered into bundles of eighteen and passed through a dryer maintained at 190° to 195°C. A slight tension is maintained on the filaments throughout the drying process. The bundle is then lubricated, wound, inspected, and shipped to customers. The finished product maintains its integrity as a coherent bundle and resists splaying. At trial, the parties concentrated on the drying step, with the Government contending that at this elevated temperature, albeit below the

melting point of the polymer (about 240° to 245°C), fusing or bonding of the individual filaments to each other occurred; whereas, appellant argued that the filaments merely cohered at certain points along the length of the finished product. Both parties presented testimony of expert witnesses as well as photomicrographs of the product.

*Proceedings Below*

The Customs Court observed that the statutory definition of "monofilaments" in headnote 3(b) is not limited to single filaments, but also includes "single filaments . . . produced from two or more filaments fused or bonded together," and concluded that, if fusing or bonding had occurred, the imported merchandise was correctly classified and the protest had to be denied. After reviewing the testimony of both parties, the court accepted that of the Government's witness, Dr. Couper, who stated that at the points of contact the filaments were "coalesced, which is to become unitary," and that "bonding, very clearly, is used in this sense and fusion is used loosely in this sense. But bonding and coalesence [sic], especially, refer to this phenomenon."

The court noted that appellant had the burden of proving by a preponderance of the evidence that the Government's classification was incorrect; but that appellant's witnesses could not deny the existence of the phenomena that caused Dr. Couper to conclude that the filaments had "coalesced" or "fused," particularly their incapability of being separated without causing a "webbing" or "tearing." Accordingly, the court concluded that individual filaments in Sarlane "have been fused or bonded together in the process of its production" and denied the protest.

*The "Single" Filament Issue*

■ Appellant initially urges that the Customs Court bypassed the threshold issue

---

1. *Webster's Third New International Dictionary* 2181 (1971) defines "spandex" as:

any of various synthetic textile elastic fibers that are long-chain polymers composed of at

of whether Sarlane is a *single* filament. It contends that in order to be properly classifiable as a "monofilament," the individual filaments in Sarlane would have to be fused or bonded together into a single filament.[2] However, such a restrictive interpretation of the headnote 3 definition of "monofilament" would render the "bonded" portion of the definition superfluous, since "bonded" filaments could not form a single, unitary filament. Fusing is a chemical joining to become unitary,[3] as opposed to bonding, in which there is a joining but not a unification.[4] Congress is presumed not to have used superfluous words in a statute. *Platt v. Union Pacific Railroad,* 99 U.S. 48, 58, 25 L.Ed. 424 (1878).

▮ Such a restrictive interpretation would also be contrary to the commercially understood meaning of "monofilament"; whereas, the terms in tariff acts presumably carry the meaning given them in trade and commerce. *Barnebey-Cheney Co. v. United States,* 487 F.2d 553, 61 CCPA 10, C.A.D. 1110 (1973); *Hummel Chemical Co. v. United States,* 29 CCPA 178, C.A.D. 189 (1941). Moreover, the *Tariff Classification Study,* Schedule 3 at 515 (1960), clearly indicates that Congress was made aware that certain spandex filaments had been produced which, although originating in production as multiple filaments, were caused to so coalesce or adhere to each other that the finished product was utilized by the textile industry as a monofilament.

Although, as pointed out by appellant, Congress was made aware of such functional monofilaments in a proposed amendment by the Man-Made Fiber Producers Association (MFPA) to the definition of "grouped filaments" to exclude such functional monofilaments from that item, and did not adopt the amendment, we are not persuaded that this evidenced Congressional intent to include filaments such as Sarlane under the "grouped filaments" item. While the MFPA proposal was not accepted, the definition of "monofilaments," which theretofore had been restricted to single, unitary filaments,[5] was amended to embrace "filaments fused, or bonded together," as now provided. Also, we note the similarity of the language in the MFPA proposal [6] ("coalesce" and "adhere") to the headnote language of "fused" (equated by appellant's own witness with "coalesced" [7]) and "bonded" (synonymous with "adhere" [8]). It is clear that Congress, instead of adopting the MFPA proposal to *exclude* functional monofilaments from the "grouped filaments" classification, broadened the definition of "monofilaments" to embrace such products.

Appellant further argues that Sarlane is not a "functional monofilament" because "it exhibits characteristics of a true multifi-

least 85 percent of a segmented polyurethane.

**2.** *Webster's Third New International Dictionary* 1462 (1961) defines "monofilament" as:
a single untwisted synthetic filament (as of nylon) made in varying diameters for use in textiles, hosiery, and screens or as bristles, fishing lines, and sutures—compare MULTIFILAMENT.

**3.** *Webster's, supra* note 2 at 925, defines "fused" as:
1a: melted together: united by heating . ..

**4.** *Webster's, supra* note 2 at 250, defines "bond" as:
an adhesive that binds different ingredients together . . . 3: to bind together or

connect by or as if by bonds: as *a*: to cause to adhere firmly (as metal to glass or plastic). *Fairchild's Dictionary of Textiles* 246 (1967) defines and contrasts fusing and bonding:
Fusing: The chemical joining of two fabrics to become one fabric, as opposed to bonding, in which the fabrics are joined, but do not become one fabric.

**5.** *Tariff Classification Study, supra* at 285.

**6.** *Id.* at 515.

**7.** Testimony of Golub:
Q. What does the term coalesced mean?
A. Coalesced is the equivalent of fused.

**8.** See note 4, *supra.*

lament in that its fibers act independently." However, the issue is whether the individual filaments in Sarlane are "fused, or bonded together," not whether they exhibit multifilament characteristics.

*The "Fused or Bonded Together" Issue*

■■■ Dictionary definitions of "fused" and "bonded," *supra* notes 3 and 4, indicate that fusing requires heating and melting, while bonding requires the presence of an adhesive substance. However, since we are concerned with the meaning of "fused" and "bonded" in the fiber industry for tariff purposes, testimony regarding the commercial usage of those terms is highly relevant. See *E. Dillingham, Inc. v. United States*, 490 F.2d 967, 61 CCPA 34, C.A.D. 1114, (1974).[9] Appellant's witnesses, Drs. Peters and Golub, both admitted that fusing can occur below the melting point of the filaments. Dr. Golub also testified that a phenomenon known as "self-bonding" can occur which will result in the fusing, coalescing, or bonding of the filaments together without addition of any extra adhesive substance. Thus, it is apparent that, in commercial usage, "fused" does not require melting, and "bonded" does not require the addition of adhesive.

Turning to the process from which Sarlane is produced, Dr. Peters admitted that "flow or creep" (*i. e.*, "molecular movement, slippage") of spandex-type fibers could occur at the temperatures used in the drying stage. He also testified that the filaments were under slight tension as they passed through the dryer.

Appellant challenges the conclusion of the Customs Court and the testimony of Dr. Couper that there was flow or movement of material *between* Sarlane filaments during the drying stage, arguing that its witnesses were discussing only creep or flow *within* individual filaments. However, Dr. Peters testified that his own patent, which was directed to a slightly different process of producing spandex fibers, taught that fusing occurred *between* individual filaments at temperatures below the melting point of the spandex.[10] Dr. Golub testified that all that occurred during the Sarlane drying step was that the individual filaments "cohered" (*i. e.*, touched), but that no flow occurred between filaments. However, the photomicrograph exhibits clearly show a tearing or ripping of the Sarlane filaments when separated, and Dr. Couper's testimony on the appearance of web-like material at the points of tearing on the Sarlane filaments stands largely unrebutted. If the "cohesion" theory of Dr. Golub were correct, separation of the filaments would not result in a ripping or tearing; rather, their surfaces would remain intact—much like the metal surfaces in Golub's "Johanson block" analogy.[11]

We are satisfied that the Customs Court did not err in concluding that individual filaments in Sarlane were "fused, or bonded together" to the extent that such filaments were thereafter no longer independent filaments and that appellant failed to carry its burden of proving the Government's classification incorrect.

Accordingly, the judgment of the Customs Court is *affirmed.*

9. Since the common meaning of tariff terms is a question of law, testimony of witnesses on that question is not binding on this court. See *United States v. Norman G. Jensen, Inc.*, 64 CCPA ——, C.A.D. 1183, 550 F.2d 662 (1977).

10. The Peters patent uses more solvent than is present in the filaments of Sarlane at the drying stage to render the spandex to a semi-plastic state in which fusing occurs. However, Peters did admit that heat and solvent were equivalent in obtaining fusing of filaments.

11. Johanson blocks are flat plates of finely polished metal. When put together face-to-face, they cannot be pulled apart; they must be slid apart. Individual filaments of Sarlane are quite difficult to separate (Peters could only separate them into three bundles, not the 18 individual filaments) and cannot be made cohesive again by merely pushing them back together.