**NEC AMERICA, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Court No. 83-3-00419.**

United States Court of International Trade.

Sept. 25, 1984.

Glad, White & Ferguson, Los Angeles, Cal. (Edward N. Glad, Los Angeles, Cal., at trial and on brief), for plaintiff.

Richard K. Willard, Acting Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Attorney in Charge, International Trade Office, Commercial Litigation Branch, New York City (Michael P. Maxwell, New York City, at trial and on brief), for defendant.

RE, Chief Judge:

The question presented in this case pertains to the proper classification, for customs duty purposes, of certain merchandise imported from Japan, and described on the customs invoice as "paging receivers."

The merchandise was classified by the Customs Service as "other solid-state (tubeless) radio receivers" under item 685.24 of the Tariff Schedules of the United States (TSUS). Consequently, the merchandise was assessed with duty at a rate of 8.8 per centum ad valorem.

Plaintiff protests this classification and contends that the merchandise is properly classifiable under item 685.70, TSUS, as "indicator panels and other sound or visual signalling apparatus" dutiable at a rate of 3.5 per centum ad valorem.

The pertinent statutory provisions of the tariff schedules are as follows:

Classified under:

Schedule 6, Part 5:

Radiotelegraphic and radiotelephonic transmission and reception apparatus; radiobroadcasting and television transmission and reception apparatus, and television cameras; record players, phonographs, tape recorders, dictation recording and transcribing machines, record changers, and tone arms; all of the foregoing, and any combination thereof, whether or not incorporating clocks or other timing apparatus, and parts thereof:

. . .

Radiotelegraphic and radiotelephonic transmission and reception apparatus; radiobroadcasting and reception apparatus, and parts thereof:

. . .

Other:
Solid-State (tubeless) radio receivers:

. . .

685.24 Other .......... 8.8% ad val.

Claimed under:

Schedule 6, Part 5:

685.70 Bells, sirens, indicator panels, burglar and fire alarms, and other sound or visual signalling apparatus, all of the foregoing which are electrical, and parts thereof ......................... 3.5% ad val.

■ The question presented is whether, within the meaning of the tariff provisions, the imported merchandise is dutiable as "other solid-state (tubeless) radio receivers," as classified by Customs, or as "indicator panels and other sound or visual signalling apparatus," as claimed by plaintiff. In order to decide this issue, the court must consider "whether the government's classification is correct, both independently and in comparison with the importer's alternative." *Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed.Cir.1984), *reh'g denied*, No. 83–1108 (Fed.Cir. July 17, 1984).

■ After an examination of the merchandise, relevant case law, lexicographic definitions, and testimony of record, it is the determination of the court that the plaintiff has not overcome the presumption of correctness that attaches to the government's classification. 28 U.S.C. § 2639(a)(1) (1982); *Jarvis Clark Co. v. United States*, 733 F.2d 873, 876, *reh'g denied*, 739 F.2d 628 (Fed.Cir.1984); *E.R. Hawthorne & Co. v. United States*, 730 F.2d 1490, 1490 (Fed.Cir.1984).

The imported paging receivers are small electrical devices which are pre-set to a certain radio frequency channel. The pagers are battery-powered and have liquid crystal diode visual display (LCD) units with a ten digit capacity. They are activated by means of a 3-motion switch. When the switch is turned, the pager emits a tone and the liquid crystal display is illuminated to indicate that it is operational.

When reset, the pager is activated by a binary digital code transmitted over the pre-set radio channel. The radio signal is received by the pager, detected, and sent to a decoding device which activates the pager. When activated, the pager generates a tone and presents numerical information on a visual display LCD. The device converts binary information received through the radio frequency into digital information on the LCD. The pager can thereby receive information such as telephone numbers, stock quotations, or coded messages. It also has a memory capability which allows it to store and recall messages.

In attacking the Customs Service's classification of the paging receivers, it is plaintiff's principal contention that a radio receiver necessarily requires a tuner, that is, a device that enables the user to select more than one frequency, as well as an audio amplifier.

In order to determine whether the imported paging devices are radio receivers, the court must ascertain the precise meaning of "radio receivers," as used by Congress in the tariff schedules. The meaning of a tariff term "is presumed to be the same as its common or dictionary meaning in the absence of evidence to the contrary." *Bentkamp v. United States*, 40 CCPA 70, 78, C.A.D. 500 (1952), *quoted with approval in Rohm & Haas Co. v. United States*, 727 F.2d 1095, 1097 (Fed. Cir.1984). It is well established that the "common meaning of a tariff term is not a question of fact but a question of law." *Schott Optical Glass, Inc. v. United States*, 67 CCPA 32, 34, C.A.D. 1239, 612 F.2d 1283, 1285 (1979).

The tariff schedules are written in the language of commerce, and the terms used are to be given their commercial or common meaning. *See Ameliotex, Inc. v. United States*, 65 CCPA 22, 25, C.A.D. 1200, 565 F.2d 674, 677 (1977); *Esco Mfg. Co. v. United States*, 63 CCPA 71, 73, C.A.D. 1167, 530 F.2d 949, 951 (1976). Accordingly, the court must examine the lexicographic definitions, as well as the testimony given at trial, to determine whether the paging devices are radio receivers.

"Radio receiver," as used in item 685.24, is an *eo nomine* designation. In the absence of a demonstrated legislative intent to the contrary, an *eo nomine* designation of an article will include all forms of the article. *See, e.g., Pistorino & Co., Inc. v. United States*, 82 Cust.Ct. 168, 177, C.D. 4799 (1979), *quoting Nootka Packing Co. v. United States*, 22 CCPA 464, 470, T.D. 47464 (1935). It must also be remembered that the tariff statutes were enacted "not only for the present but also for the future, thereby embracing articles produced by technologies which may not have been employed or known to commerce at the time of the enactment ...." *Corporacion Sublistatica, S.A. v. United States*, 1 CIT 120, 126, 511 F.Supp. 805, 809 (1981); *see also Davies Turner & Co. v. United States*, 45 CCPA 39, 41, C.A.D. 669 (1957).

In the *McGraw-Hill Encyclopedia of Science and Technology*, Vol. 11 (5th ed. 1982), radio receiver is defined as "[t]hat part of a radio communication system which abstracts the desired information from the radio frequency (rf) energy collected by the antenna. All radio receivers must perform three basic functions: selectivity, amplification, and detection." *Id.* at 282.

The *Institute of Electrical and Electronics Engineers Standard Dictionary of Electrical and Electronics Terms* (2d ed. 1977) defines radio receiver as a "device for converting radio-frequency power into perceptible signals." *Id.* at 554.

Radio receiver is defined in *Cooke & Markus, Electronics and Nucleonics Dictionary* (1960) as a device "that converts radio waves into intelligible sound or other perceptible signals." *Id.* at 380.

At trial, plaintiff offered the testimony of Mr. Michael J. McLaughlin, its Manager of Pager Engineering. Mr. McLaughlin has been employed by the plaintiff for six years since his discharge from the Air Force, and holds a third-class F.C.C. license with broadcast endorsement. Although he has taken some courses in radio communications, Mr. McLaughlin does not have a college degree and is not a member of any professional organization in the radio communications industry. On cross-examination, he testified that a radio receiver is a device "which has external tunability, receives radio frequency, and detects them, and puts them through an audio amplifier to an audio output of some type." Although Mr. McLaughlin took issue with most of the lexicographic definitions read to him, he agreed that the paging receivers perform the functions of selection, amplification, and detection, as those terms are

defined by the *McGraw-Hill Encyclopedia of Science and Technology.*

Mr. Gerald M. LeBow, owner of Technical Marketing Consultants, Inc., a company that provides technical marketing and sales information pertaining to the consumer and professional electronics industries, testified for the government. He has extensive and varied experience in the radio broadcasting industry and is a member of a number of professional or trade associations. In addition, he has written papers on radio technology and has a first-class radio telephone license and an amateur radio license from the F.C.C. Mr. LeBow defined radio receiver as a device which performs selection, amplification and detection, and stated that the pagers perform all three of these functions. He further testified that, in his opinion, the receiving pagers would be considered radio receivers within the radio communications industry.

Selectivity is defined as the ability to select a particular frequency from the many radio signals in the atmosphere. The paging devices that are the subject matter of this action perform this function. They are pre-set to receive a particular frequency.

Amplification is the process of increasing the radio frequency energy received by the antenna so that it can be used to generate a signal. Both parties admit that the display paging receivers perform this function.

Detection is the process whereby the radio frequency waves are converted into a signal that can be utilized. The paging units convert radio frequency input, in the form of a binary code, into output in the form of a digital display on the LCD.

Mr. McLaughlin, plaintiff's witness, acknowledged that the paging device performed the three essential functions of selectivity, amplification, and detection. He testified, however, and the plaintiff contends, that a radio receiver must also have a tuner and an audio amplifier. In support of this contention, the plaintiff cites *Audiovox Corp. v. United States,* 1 CIT 136, 141 (1981). In *Audiovox,* plaintiff challenged the classification of imported FM converters as solid-state (tubeless) radio receivers designed for motor vehicle installation under item 685.24 of the tariff schedules. The converters were used to adapt motor vehicle AM radios so as to permit FM reception.

The *Audiovox* court found that "[t]he sole function of the FM converter is to receive and then convert FM radio signals into AM radio wave signals." *Id.* at 142. In normal use, the converters could not produce an audio signal by attachment to a loudspeaker. Emphasizing that the converter by itself would be "commercially impractical for use as a radio receiver," the court found that the converters were merely accessories to existing AM receivers in motor vehicles, and not "radio receivers" unto themselves. *Id.* at 143. The holding in *Audiovox* was limited to radio receivers designed for automobile installation which, as the court found, must have audio capability to be commercially practical.

In *Symphonic Electronics Corp. v. United States,* 72 Cust.Ct. 211, C.D. 4543 (1974) (*Symphonic I*), AM/FM tuners were classified under item 685.23 as "solid-state (tubeless) radio receivers." *Id.* at 213. Plaintiff claimed that the tuners were "more than" a radio receiver since they were to be used in combination with a phonograph and tape player. The court determined that the common meaning of radio receiver included "tuner-amplifiers which, in addition to receiving radio signals . . ., are capable of controlling and amplifying signals from a record changer and tape player connected by wires to the tuner-amplifier." *Id.* at 217.

In *Symphonic Electronics Corp. v. United States,* 77 Cust.Ct. 147, C.R.D. 76–5 (1976) (*Symphonic II*), the court had before it merchandise that was "the same in all material respects" as that considered in *Symphonic I.* On cross-motions for summary judgment, plaintiff alleged that radio chassis were improperly classified as radio receivers because they were lacking a cabinet and loudspeaker, which were urged to be the essential components. The *Sym-*

*phonic II* court held that there existed a triable issue "concerning the essential components of a radio receiver, as that term is commonly understood in the electronics industry; and concerning whether a stereo 'chassis' or tuner-amplifier of the type represented by the Model R860 was commonly regarded and sold within the trade as a 'radio receiver.'" *Id.* at 153.

All the foregoing cases dealt with products or components of systems designed to receive commercial radio stations that broadcast to the public at large. The factual context of the present case is quite different. To be commercially practical, a receiver designed for commercial entertainment broadcasts requires a tuner in order to select among the frequencies of various radio stations. The class of "radio receivers," however, is not limited to entertainment broadcast receivers, and as an *eo nomine* designation, includes all forms of radio receivers.

At trial, there was uncontradicted expert testimony that other types of radio receivers, such as industrial receivers for use by police and fire departments, or taxis, or "Musak" receivers, are pre-set to one frequency, and have no variable tuning capability. Similarly, commercial broadcast receivers, of course, are designed with an audio capability. Again, however, the class of "radio receivers" is broader than simply commercial broadcast receivers.

There was testimony that other types of radio receivers emit signals other than audio signals. For example, receivers, in radar systems convert radio signals into visual, rather than audio, signals. In addition, utility load management systems and remote control devices convert radio frequency into coded control signals without an audio output. Moreover, the lexicographic definitions do not limit output to sound or audio signals, but refer to "perceptible signals." Thus, a careful reading of *Audiovox, Symphonic I,* and *Symphonic II* reveals that those cases are limited to devices designed to receive radio broadcasts transmitted to the public at large.

In the most recent case on point, *General Electric Co. v. United States,* 2 CIT 84, 525 F.Supp. 1244 (1981), *aff'd,* 69 CCPA 166, 681 F.2d 785 (1982), plaintiff challenged the classification of three types of electronic packs (chassis) as unfinished solid-state (tubeless) radio receivers. Plaintiff argued that, since the chassis were missing significant parts such as a power transformer, power cord, and loudspeaker, the chassis were inoperable as radio receivers and, thus, improperly classified. Defendant argued that the classification was proper since "the chassis were capable of performing the basic functions of a 'radio receiver' within the common meaning of that term." *Id.* at 87, 525 F.Supp. at 1246. Therefore, the *General Electric* court stated that "central to the dispute between the parties is a determination of the common meaning of the term 'radio receiver.'" *Id.* at 90, 525 F.Supp. at 1248. The court reviewed the pertinent lexicographic definitions and relevant case law and determined that "the basic functions of a radio receiver are selection, amplification and detection." *Id.* Accordingly, the chassis were held to be unfinished radio receivers as classified by Customs. On appeal, adopting the opinion authored by Judge Newman for the Court of International Trade, the United States Court of Customs and Patent Appeals affirmed. 69 CCPA 166, 167, 681 F.2d 785, 786 (1982).

This Court agrees with the holding in *General Electric Co. v. United States,* 2 CIT 84, 525 F.Supp. 1244 (1981), *aff'd,* 69 CCPA 166, 681 F.2d 785 (1982) in which the court defined the basic functions of a radio receiver as selectivity, amplification, and detection. The paging receivers here are self-contained units that select a frequency, amplify it, and convert radio signals into perceptible signals, *i.e.,* visual digital indications on the LCD.

It is also significant to note that the plaintiff's marketing literature, operations and service manuals, invoices and its personnel regularly refer to various display pagers as paging *receivers.* For example, one N.E.C. service manual describes a similar device as "an all solid state double

superheterodyne *FM receiver.*" While such descriptions are not conclusive, they are relevant evidence of industry usage, particularly when they contradict the plaintiff's present position in this litigation. *See Lukas American, Inc. v. United States,* 7 CIT ——, slip op. 84–55, at 5 (May 24, 1984); *Nomura (America) Corp. v. United States,* 62 Cust.Ct. 524, 532–33, C.D. 3820, 299 F.Supp. 535, 542 (1969), *aff'd,* 58 CCPA 82, C.A.D. 1007, 435 F.2d 1319 (1971).

■ Expert testimony as to the common meaning of a tariff term is, of course, merely advisory. *E.g., Package Machinery Co. v. United States,* 41 CCPA 63, 66, C.A.D. 1200 (1953). It is, however, considered probative when supported by lexicographic and technical sources. In this case, the court finds the testimony of Mr. LeBow, the defendant's expert, both credible and persuasive. Mr. LeBow had sound academic credentials, and wide-ranging, practical experience in the radio industry. On the other hand, even apart from academic training, Mr. McLaughlin's experience is limited to working with non-commercial radio equipment in the Air Force and the California Air National Guard, and his civilian experience with the plaintiff. Mr. McLaughlin seemed to be straining at times, and was forced to quibble or disagree with the definitions read to him. For example, he testified that a radio receiver must directly convert radio signals, rather than convert them indirectly as the paging receivers do. There is no support for this assertion in any of the sources cited. It is well established that conclusory statements by a witness which are based solely on his own opinion have little or no probative value. *See, e.g., Keer, Maurer Co. v. United States,* 46 CCPA 110, 115, C.A.D. 710 (1959); *Schott Optical Glass, Inc. v. United States,* 82 Cust.Ct. 11, 22–23, C.D. 4783, 468 F.Supp. 1318, 1325, *aff'd,* 67 CCPA 32, C.A.D. 1239, 612 F.2d 1283 (1979).

Mr. LeBow was forthright and straightforward in his testimony, and his opinions were supported by lexicographic and scientific sources. In short, the defendant did not simply rely on the statutory presumption of correctness. Rather, it has submitted competent, reliable and credible affirmative evidence, which the court has found persuasive, to support the Customs Service's classification of the imported merchandise. *See Schott Optical Glass, Inc., supra,* 82 Cust.Ct. at 24, 468 F.Supp. at 1326; *Ameliotex, Inc. v. United States,* 77 Cust.Ct. 72, 84, C.D. 4673, 426 F.Supp. 556, 564 (1976), *aff'd,* 65 CCPA 22, 565 F.2d 674 (1977).

The court has considered the plaintiff's contention that the merchandise should be classified under item 685.70, TSUS, which covers electrical "[b]ells, sirens, indicator panels, burglar and fire alarms, and other sound or visual signalling apparatus," and finds it without merit.

■ It is axiomatic that merchandise which constitutes more than a particular article is not classifiable as that article. *E.g., United States v. Flex Track Equipment Ltd.,* 59 CCPA 97, 100, C.A.D. 1046, 458 F.2d 148, 151 (1972); *E. Green & Son (New York), Inc. v. United States,* 59 CCPA 31, 34, C.A.D. 1032, 450 F.2d 1396, 1398 (1971). As the Court of Customs and Patent Appeals stated, the rules applying to the "more than" doctrine are general, and "each case must in the final analysis be determined on its own facts." *E. Green & Son (New York), Inc. v. United States, supra,* 59 CCPA at 34, 450 F.2d at 1398.

The display paging receivers clearly perform more than a signalling function. Indeed, the device's primary marketing feature that distinguishes it from the tone-only pager, is its superior communication capability. Clearly, signalling is one form of communication and a great many products or articles of commerce are capable of signalling in some way or another. Classification under item 685.70, TSUS, as "other visual or sound signalling apparatus," however, is limited to those articles whose sole purpose and function is merely signalling. This court has held that "other sound or visual signalling apparatus" must "call attention to temporary or abnormal conditions," *Oxford Int'l Corp. v. United States,* 75 Cust.Ct. 58, 68, C.D. 4608 (1978); *see Amersham Corp. v. United States,* 5 CIT ——, 564 F.Supp. 813, 825 (1983), or to

"a special circumstance," *A & A International, Inc. v. United States*, 5 CIT ——, Slip op. 83–42, at 12 (1983).

The capabilities of the imported paging receivers, however, transcend mere signalling. The information that can be received is not limited to temporary or abnormal conditions, or any set of special circumstances. Rather, the device has the capacity to receive any information that can conceivably be reduced to digital form. In addition, the product's ability to store and recall messages also constitutes something more than a signalling function. Thus, a careful analysis of the receiver's capabilities clearly indicates that the article is not properly classifiable under 685.70, TSUS.

Since the imported paging receivers perform the functions of selectivity, amplification and detection, and convert radio waves into perceptible signals, they fall within the accepted definition of radio receivers. It is, therefore, the determination of the Court that the presumption of correctness that attaches to the government's classification has not been overcome.

Since the Court holds that the paging receivers are properly classified as "other solid-state (tubeless) radio receivers" under item 685.24 of the tariff schedules, plaintiff's claim is denied and the action is dismissed. Judgment will issue accordingly.