B & E Sales Co., Inc., plaintiff *v.* United States, defendant

Court No. 83–6–00883

Before Re, *Chief Judge.*

(Decided February 28, 1985)

*Rode & Qualey* (*Patrick D. Gill* on the brief), for the plaintiff.
*Richard K. Willard,* Acting Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch (*Saul Davis* on the brief), for the defendant.

Re, *Chief Judge:* The question presented in this case pertains to the proper classification, for customs duty purposes, of certain merchandise imported from Hong Kong, and described on the customs invoice as "headphone radios."

The parties are before the court on cross-motions for summary judgment. The merchandise was classified by the Customs Service as "solid-state (tubeless) radio receivers" under item 685.24 of the Tariff Schedules of the United States (TSUS). Consequently, the merchandise was assessed with duty at a rate of 8.8 per centum ad valorem.

Plaintiff protests this classification and contends that the merchandise is properly classifiable under item 684.70, TSUS, as "headphones," dutiable at a rate of 6.5 per centum ad valorem. Alternatively, plaintiff contends that the merchandise is classifiable as "radiobroadcasting * * * reception apparatus" under either

685.29, TSUS, dutiable at a rate of 6.0 per centum ad valorem, or 685.50, TSUS, dutiable at a rate of 6.5 per centum ad valorem.

In addition, plaintiff contends that if its claim for classification of the imported merchandise is sustained by this Court under either item 684.70, TSUS, or 685.29, TSUS, and provided that a certificate of origin, Form A, is either supplied by plaintiff or waived by defendant, the merchandise would be eligible for duty-free treatment under the Generalized System of Preferences (GSP).

Since the merchandise in this case had been classified by Customs as "solid-state (tubeless) radio receivers" under 685.24, TSUS, and, therefore, was not eligible for preferential treatment under the GSP, the Government of Hong Kong refused to issue the appropriate Form A in this case. Plaintiff, nevertheless, maintains that if its claims are sustained under either item 684.70, TSUS, or item 685.29, TSUS, the Government of Hong Kong would issue, retroactively, a Form A for the imported merchandise.

The pertinent statutory provisions of the tariff schedules are as follows:

*Classified under:*
Schedule 6, Part 5:
Radiotelegraphic and radiotelephonic transmissions and reception apparatus; radiobroadcasting and television transmission and reception apparatus, and television cameras; record players, phonographs, tape recorders, dictation recording and transcribing machines, record changers, and tone arms; all of the foregoing, and any combination thereof, whether or not incorporating clocks or other timing apparatus, and parts thereof:

*     *     *     *     *     *     *

Radiotelegraphic and radiotelephonic transmission and reception apparatus; radiobroadcasting and reception apparatus, and parts thereof:

*     *     *     *     *     *     *

Other:
Solid-State (tubeless) radio receivers:

*     *     *     *     *     *     *

685.24      Other .............................. 8.8% *ad val.*
*Claimed by Plaintiff:*
Schedule 6, Part 5:
684.70      Microphones; loudspeakers; head- 6.5% *ad val.**
phones; audio-frequency electric am-
plifiers: electric sound amplifier sets

---

* Duty-free under the Generalized System of Preferences, provided that a certificate of origin, Form A, is either supplied by plaintiff or waived by defendant.

*Alternative classifications claimed by plaintiff:*
Schedule 6, Part 5:
685.29     Radiotelegraphic * * * radiobroad
           casting * * * reception apparatus

\*      \*      \*      \*      \*      \*      \*

           Other .................................. 6.0% *ad val.*\*
685.50     Radiotelegraphic * * * radiobroadcast-
           ing * * * reception apparatus

\*      \*      \*      \*      \*      \*      \*

           Other .................................. 6.5% *ad val.*

A motion for summary judgment under Rule 56 of the Rules of this Court may be granted only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *C.J. Tower & Sons of Buffalo, Inc.* v. *United States,* 68 Cust. Ct. 17, 22, C.D. 4327, 336 F.Supp. 1395, 1399 (1972), *aff'd,* 61 CCPA 90, C.A.D. 1129, 499 F.2d 1277 (1974); *see generally* 6 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶56.15 [1.–0] (2d ed. 1983). The burden is upon the party moving for summary judgment to show that there are no material facts in dispute. *Adickes* v. *S.H. Kress & Co.,* 398 U.S. 144, 157 (1970).

Plaintiff and defendant agree that, although there are contradictory statements in the pleadings as to whether "loudspeakers" are contained in the imported merchandise, there is no dispute that the merchandise in question includes transducers. Since, according to the lexicographic authorities, a loudspeaker is a particular type of transducer, *see, e.g., McGraw-Hill Dictionary of Scientific and Technical Terms* 1665 (3rd ed. 1984), the court concludes that it is not material whether the imported merchandise contains loudspeakers. Hence, summary judgment is not precluded.

The question presented, therefore, is whether, within the meaning of the competing tariff procisions, the imported merchandise is dutiable as "other solid-state (tubless) radio receivers," as classified by Customs, or as "headphones" or "radiobroadcasting reception apparatus," as claimed by plaintiff. In order to decide this question, the court must consider "whether the government's classification is correct, both independently and in comparison with the importer's alternative." *Jarvis Clark Co.* v. *United States,* 733 F.2d 873, 878, *reh'g denied,* 739 F.2d 628 (Fed Cir. 1984).

After a thorough examination of the merchandise, relevant case law, lexicographic definitions, the pleadings, and supporting papers, it is the determination of the court that the plaintiff has not overcome the presumption of correctness that attaches to the government's classification. *See* 28 U.S.C. § 2639(a)(1)(1982); *Jarvis*

---

\* Duty-free under the Generalized System of Preferences, provided that a certificate of origin, Form A, is either supplied by plaintiff or waived by defendant.

*Clark Co.* v. *United States, supra; E.R. Hawthorne & Co.* v. *United States,* 730 F.2d 1490, 1491 (Fed. Cir. 1984).

It is undisputed that the imported headphone radios are battery-powered devices that contain transistorized radio receivers, and can be worn upon a person's head. They are designed to receive and transform commercial AM or FM radio signals into audio output through two transducers. The transducers of the headphone radios are housed in two plastic "cabinets" covered by foam-filled ear cushions, and are joined together by an adjustable metal band.

The headphone rasios are activated by setting the band selector switch on either the AM or FM position, by turning the on/off switch and volume control knob clockwise to the desired sound level, and rotating the station selector knob to the desired station. Although the merchandise, because of the adjustable metal band, is intended to be worn or placed upon one's head, it is not necessary that it be worn in order to her the sounds that it produces.

In attacking the Customs Service's classification of the headphone radios, it is plaintiff's principal contention that the imported merchandise is "more than" a radio receiver. Hence, plaintiff contends that, as such, it should be classified under either item 684.70, USUS, as a headphone or, alternatively, as radiobroadcasting reception apparatus under either item 685.29, TSUS, or item 685.50, TSUS.

To determine whether the imported articles are "more than" radio receivers, as provided in item 685.24, TSUS, it is "necessary to ascertain the common meaning of the tariff provision and compare it with the merchandise in issue." *E. Green & Son, Inc.* v. *United States,* 59 CCPA 31, 34, C.A.D. 1032, 450 F.2d 1396, 1398 (1971). The meaning of a tariff term "is presumed to be the same as its common or dictionary meaning in the absence of evidence to the contrary." *Bentkamp* v. *United States,* 40 CCPA 70, 78, C.A.D. 500 (1952), *quoted with approval in Rohm & Haas Co.* v. *United States,* 727 F.2d 1095, 1097 (Fed. Cir. 1984). It is well established that the "common meaning of a tariff term is not a question of fact but a question of law." *Schott Optical Glass, Inc.* v. *United States,* 67 CCPA 32, 34, C.A.D. 1239, 612 F.2d 1283, 1285 (1979).

The tariff schedules are written in the language of commerce, and the terms used are to be given their commercial or common meaning. *See Ameliotex, Inc.* v. *United States,* 65 CCPA 22, 25, C.A.D 1200, 565 F.2d 674, 677 (1977); *Esco Mfg. Co.* v. *United States,* 63 CCPA 71, 73 C.A.D. 1167, 530 F.2d 949, 951 (1976). Accordingly, the court must examine the lexicographic definitions to determine whether the imported articles are "more than" radio receivers.

A radio receiver, as provided in item 685.24, TSUS, is an *eo nomine* designation which has been lexicographically and judicially defined as capable of performing three basic functions: selectivity, amplification, and detection. *See NEC, America, Inc.,* v. *United States,* 8 CIT 184, 596 F.Supp. 466, 468 (Sept. 25, 1984), *appeal docketed,* No.

85–708 (Fed. Cir. Oct. 31, 1984), *citing, McGraw-Hill Encyclopedia of Science and Technology,* Vol. 11 (5th ed. 1982); *Institute of Electrical and Electronics Engineers Standard Dictionary of Electrical and Electronics Terms* (2nd ed. 1977); and *Cooke & Markus, Electronics and Nucleonics Dictionary* (1960). *See also General Electric Co.* v. *United States,* 2 CIT 84, 525 F.Supp. 1244 (1981), *aff'd,* 69 CCPA 166, 681 F.2d 785 (1982). An *eo nomine* designation, in the absence of contrary legislative intent, embraces all forms of the article, including articles produced by technologies not known at the time of the legislative enactment. *See Corporacion Sublistatica, S.A.* v. *United States,* 1 CIT 120, 126, 511 F.Supp. 805, 809 (1981).

An examination of the imported headphone radios in this case reveals clearly that they perform the three essential functions of a radio receiver as set forth in *NEC, America, supra,* 596 F. Supp. at 468. There is no question that the imported headphone radios are self-contained units with the capacity to: (1) select a particular frequency from the many radio signals in the atmosphere; (2) amplify the radio frequency energy received by its antenna so that it can be used to generate a signal; and (3) detect or convert the radio signals into a signal that can be utilized by the operator of the device.

Plaintiff, however, maintains that, notwithstanding the fact that the imported article contains a radio receiver, it also contains a headphone which, it submits, is its predominant and most readily recognizable feature. Hence, plaintiff contends that the headphone design of the merchandise with the bracket that permits it to be placed on the head, renders the article "more than" a radio receiver, or, at least, "co-equal" with the "radio receiver portion" of the article.

Defendant, on the other hand, contends that the "headphone portion" of the imported merchandise is simply a unique type of cabinet which houses an already complete radio receiver. Defendant further contends that, even if the headphone portion of the imported merchandise were to be considered a separate unit that is combined with a radio receiver, since the function of the headphone is subsidiary to that of the radio receiver, the article is still properly classifiable as a radio receiver.

In support of its position that the imported merchandise is more than a radio receiver, and, therefore, classifiable as a headphone, plaintiff refers to the following language and definitions quoted from *General Electric Co.* v. *United States,* 63 Cust. Ct. 140, C.D. 3887 (1969), *aff'd,* 58 CCPA 152, C.A.D. 1021 (1971):z

> As a result of the study of authorities cited by the parties, the examination of additional authorities and a close examination of the statutory text, we conclude that the common meaning of the term "headphones" as it is used in item 684.70 of the Tariff Schedules of the United States does not extend to items known as earphones. The best available dictionaries appear to support this conclusion.

*Funk & Wagnalls New Standard Dictionary* (1965 ed.): headphone n. *Elec.* A telephone-receiving set of earpieces connected by a metal band that rests on the head.

*Webster's New International Dictionary* (1957 ed): headphone n. (a) *Elec.* A telephone receiver held over the ear by a band worn on the head (b) *Radio.* A receiver like a telephone headphone for radio reception.

\*     \*     \*     \*     \*     \*     \*

The result of our study is that we understand headphones to be audio receiving units which are supported by the head and earphones to be such units suitable for insertion into the ear.

*Id.* at 143. Plaintiff's characterization of the above-quoted language, as contemplating that a headphone contains an "audio receiving set," *i.e.,* a radio receiver, misconstrues the holding of the court in *General Electric.*

In *General Electric,* certain imported articles, described on the invoices as "earphones," were classified by Customs as "headphones" under item 684.70, TSUS. Plaintiff protested this classification, and contended that the imported articles should have been classified as either "parts of radio reception apparatus" under item 685.22, TSUS, or as "electrical articles and electrical parts of articles, not specially provided for" under item 688.40, TSUS. Therefore, the narrow question presented in *General Electric* was whether the imported articles in that case, invoiced as "earphones," had been properly classified as "headphones" under item 684.70, TSUS. The court held that headphones, by definition, must possess a means for support on the head. Since the earphones were not designed to be supported on the head, the court concluded that the imported earphones were not properly classifiable as headphones, and should properly have been classified as "parts of radio reception apparatus." In *General Electric,* the court did not examine the provisions of item 685.24 (other solid-state (tubeless) radio receivers), the item under which the present merchandise was classified, but rather, examined the provisions of items 684.70 (headphones), and 685.22 (parts of radio reception apparatus). Hence, the court merely distinguished between a headphone and an earphone, and did not consider whether a headphone could perform the selection, amplification, and detection functions of a radio receiver. Clearly, therefore, the *General Electric* case cannot be said to be controlling here.

It must be noted that a more specific lexicographic authority defines a headphone as:

an *electrocaustic transducer designed* to be held against an ear by a clamp passing over the head *for private listening to the audio output of a communications, radio, or television receiver or other source of audio frequency signals.*

*Cooke & Marcus, Electronics and Nucleonics Dictionary* 207 (1969) (emphasis added).

The *Cooke & Marcus* definition confirms those found in *General Electric,* all of which indicate that the functions performed by a headphone are different from those performed by a radio receiver. A radio receiver is a device capable of selecting a particular frequency, amplifying it, and detecting or converting it into a perceptible signal. A headphone, on the other hand, is an auxiliary device intended to complement the use of a radio receiver, or other electronic audio device such as a cassette tape player, by permitting private listening. Although a headphone is capable of converting electrical energy into soundwaves, *see General Electric, supra,* 63 Cust. Ct. at 143, it does not perform the selection, amplification, and detection functions of a radio receiver. Thus, it is evident that the imported merchandise is not merely a headphone. It is also evident that the only feature of the imported merchandise that is not embraced within the common meaning of a radio receiver is its capacity to be worn upon a person's head. The mere fact that a device, capable of performing the functions of a radio receiver, can be worn upon a person's head, however, does not necessarily render the device "more than" a radio receiver.

In *Oxford Int'l Corp.* v. *United States,* 72 Cust. Ct. 187, C.D. 4540, 375 F. Supp. 1369 (1974), *rev'd,* 62 CCPA 102, 517 F.2d 1374 (1975), the question presented was whether bicycle mirrors, consisting of a glass reflecting surface, known as "mirror heads," and rods and clamps, referred to as "mounting brackers," were "more than" mirrors. The Customs Court held that, since the imported bicycle mirror consisted of a frame and a mirror, it was "more than" a mirror and, therefore, properly classifiable as "parts of bicycles" under item 732.36, TSUS. The Court of Customs and Patent Appeals reversed, and held that, since the imported bicycle mirrors had "a single function only, namely its function as a mirror," the imported bicycle mirrors were not "more than" mirrors. 62 CCPA at 106. Indeed, the Court of Customs and Patent Appeals reasoned that the mounting bracket "merely facilitated" the imported bicycle mirror's function as a mirror. *Id.*

Similarly, in *Astra Trading Copr.* v. *United States,* 56 Cust. Ct. 555, C.D. 2703 (1966), the question presented was whether an imported article, invoiced as a "flashlight tool," was dutiable as an entirety, and therefore, classifiable as a screwdriver under paragraph 396 of the Tariff Act of 1930. After close examination of the merchandise, together with the testimony of the witnesses, the court found that the sole function of the imported flashlight tool was to turn or drive screws. The court, therefore, refused to apply the "more than" doctrine and held that, "notwithstanding the existence of the additional feature of illuminatiuon," the imported flashlight tool did not serve "any end purpose other than that of a screwdriver." *Id.* at 562–63.

In the present case, the record includes briefs filed by the parties, as well as an uncontroverted affidavit of Mr. Leonard Feldman, an

electronic engineer and author, active in the fields of high-fidelity and audio engineering.

In his affidavit, submitted in support of the defendant's cross-motion for summary judgment, Mr. Feldman states that the imported headphone radio is a typical transistorized radio in an unusual case. He also states that "a transistorized radio is recognized in the audio industry as one of many forms of a radio receiver." Mr. Feldman concludes that, even if the headphone portion were to be considered a separate unit that is combined with the radio receiver portion to form a headphone radio, the resulting article would nevertheless be a radio receiver since the function of the headphone portion is clearly subsidiary to that of the radio receiver.

There is no doubt that the statements contained in Mr. Feldman's uncontroverted affidavit pertaining to the tariff terms "headphone" and "radio receiver" are supported by lexicographic and technical sources. The record reveals that Mr. Feldman possesses impressive academic credentials, and a diversified experience in the fields of high-fidelity and audio engineering, which were not challenged by plaintiff. Under the circumstances, the statements contained Mr. Feldman's affidavit, confirmed by the lexicographic and technical sources, are reliable and persuasive, and fully support the Customs Service's classification of the imported merchandise.

It is manifest from an examination of the sample, and a study of the record, that, in addition to performing the three functions of a radio receiver, the only other feature possessed by the imported article is that it can be worn upon a person's head. The court, however, is of the firm view that this additional feature does not tranform the basic and sole purpose of the article from its intended and actual use as a radio receiver to that of a headphone. Furthermore, the article's capacity be worn on one's head is not a function or use in addition to that of a radio receiver. This additional feature merely permits or assists its sole use as a radio receiver. Hence, the headphone portion of the imported article, like the mounting bracket in the *Oxford* case, and the flashlight in the *Astra Trading* case, merely facilitates the article's sole intended use, that is, its use as a radio receiver.

It is also significant to note that this merchandise is not designed to produce audio output from electrical signals generated by another device, such as a cassette player. In addition, the plaintiff's marketing literature, operations manual, and Federal Communications Commission (F.C.C.) application refer to the imported article as either a transistorized *radio* or broadcast *receiver*. For example, in its certification application, filed with the F.C.C. by representative of the manufacturer, the imported article is described as an *"AM/FM Broadcast Receiver."* While these descriptions are not conclusive, they are relevant evidence and reflect industry usage, particularly when they contradict the plaintiff's assertions in this ligitation. *See Lukas Am., Inc.* v. *United States,* 7 CIT 280, slip op. 84–55, at 5 (May

24, 1984); *Nomura (America) Corp.* v. *United States,* 72 Cust. Ct. 524, 532–33, C.D. 3820, 299 F. Supp. 535, 542 (1969), *aff'd,* 58 CCPA 82, C.A.D. 1007, 435 F.2d 1319 (1971).

In view of the foregoing, it is the determination of the court that, since the imported headphone radios perform the functions of selectively amplification and detection, and receive and transform commercial AM or FM signals, they fall within the accepted common meaning of radio receivers. Having concluded that the imported "headphone radios" were properly classified under the *eo nomine* provision for "radio receiver," the court need not discuss plaintiff's proposed alternatives under items 685–29, TSUS and 685.50, TSUS, since these items are residual classifications. *See* General Interpretative Rule 10(c).

Since the court holds that the headphone radios were properly classified as "other solid-state (tubeless) radio receivers" under item 685.4 of the tariff schedules, the court also need not consider whether plaintiff is entitled to preferential treatment under the GNP.

Planitiff's motion for summary judgment is denied, and defendant's cross-motion for summary judgment is granted. Judgment will issue accordingly.