**W. A. GLEESON, Appellant,**

**v.**

**The UNITED STATES, Appellee.**

**Customs Appeal No. 5368.**

United States Court of Customs and Patent Appeals.

Nov. 12, 1970.

Brown, Rudnick, Freed & Gesmer, Boston, Mass., attorneys of record, for appellant. M. Frederick Pritzker, Boston, Mass., of counsel.

William D. Ruckelshaus, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Velta A. Melnbrencis, New York City, for the United States.

Before RICH, ALMOND, BALDWIN, LANE, Associate Judges, and Mc-MANUS, Judge, Northern District of Iowa, sitting by designation.

ALMOND, Judge.

This is an appeal from the decision and judgment of the United States Customs Court, Second Division,[1] overruling certain protests against the collector's classification of the imported merchandise.

Protest No. 58/12041 relates to merchandise imported from Canada in July of 1957, entered as shoe machinery, not specially provided for, and described as rebuilt equipment for slush molding plastic footwear, including heating elements and electrical controls. The merchandise was classified under paragraph 353 of the Tariff Act of 1930, as modified by T.D. 52739, as articles having as an essential feature an electrical element or device, n. s. p. f., other, and assessed duty at a rate of 13¾ per cent ad valorem.

---

1. 62 Cust.Ct. 740, C.D. 3857 (1969).

The other protests in issue relate to merchandise imported from Canada from 1957 through 1961, variously entered as molds, shoe manufacturer's equipment and/or parts of machines having an electrical element as an essential feature. This merchandise was also classified under paragraph 353 of the Tariff Act of 1930, as modified by T.D. 52739, as parts of articles having as an essential feature an electrical element or device, n. s. p. f., other, and assessed duty at a rate of 13¾ per cent ad valorem.

It is appellant's contention that the merchandise is classifiable under paragraph 1643, Tariff Act of 1930, as modified by T.D. 52739, as "shoe machinery, whether in whole or in part, including repair parts, duty free."

The appeal comes before us on a stipulation of record that the machinery involved is slush molding machinery and is a machine having an "electrical element."

The statutes involved are, in pertinent part:

Paragraph 353, Tariff Act of 1930, as modified by T.D. 52739:

Articles having as an essential feature an electrical element or device * * *, wholly or in chief value of metal, and not specially provided for:

* * * * * * *

Other (* * *) .........13¾% ad val.

Parts, finished or unfinished, wholly or in chief value of metal, not specially provided for, of articles provided for in any item 353 of this Part * * * ..............The same rate of duty as the articles of which they are parts.

Paragraph 1643, Tariff Act of 1930, as modified by T.D. 52739:

Shoe machinery, whether in whole or in part, including repair parts .... Free

Leo Belliveau, general superintendent of the Converse Rubber Company and general foreman of its "making" department from 1958 through 1961, testified in detail concerning the structure and operation of the imported machine. In essence it appears that the machine is made up of a series of eight stations, which include a preheating oven, a station where liquid plastic is poured into a mold, a heating table, a gelling oven, a drying table, a flocking station, and a fusing oven. Apparently the machine will produce a molded plastic article of any shape, depending on the configuration of the mold. Converse Rubber imported a large number of molds of the same general type but not identical inasmuch as each shoe size, as well as classification of shoe (such as women's, men's, boys', etc.) requires a different mold. Actually the "shoe mold" is in the shape of a boot rather than a shoe.

It appears further from Belliveau's testimony that when Converse Rubber Company, the ultimate consignee, was considering going into the slush molding process for shoes, he visited the British Rubber Company in Montreal, Canada, to observe its slush molding process. During the ensuing three to six months, he traveled in the United States visiting plants which used their slush molding machines to manufacture footwear. Belliveau testified that he was not apprised whether these concerns used their slush molding machines to produce anything other than shoes. He stated that the five plants he visited were all involved in manufacturing footwear on the type of equipment imported.

On the basis of Belliveau's report, Converse Rubber Company purchased the imported machine, the only one it ever imported, from British Rubber. The machine had been specially developed for British Rubber and had been used by it exclusively for the manufacturing of shoes. Belliveau supervised the rebuilding of the machine and setting it up for eventual production, and Converse Rubber made men's rubbers, women's styled overshoes, and children's boots.

Converse Rubber did not manufacture the molds but imported hundreds of them. The inside of the mold would be the shape of the outside of the final shoe. It appears that the machine was of no use to Converse Rubber without the molds, and the molds were of no use

without the machine. For operative and production purposes, one was an essential concomitant to the other.

On cross-examination, Belliveau admitted that products other than shoes could be made on the machine; however, this would necessitate changes in equipment. Furthermore, not all stations on the machine were always used. If articles other than shoes were produced, the sole and heel table could be omitted. If a square mold were placed on the machine, a square object would result; use of a rectangular mold would produce a rectangular-shaped object. The machine was in part a conveyor type and reproduced whatever mold was hung on it.

The Customs Court, in overruling appellant's protests asserting classification under paragraph 1643, found that appellant had failed to show that the importations were chiefly used as shoe machinery and parts thereof. The court observed that it is "not enough for plaintiff to prove use in the Converse plant" and that it is chief use in the United States that governs and not merely use in importer's factory. The court cited E. Dillingham, Inc. v. United States, 54 CCPA 121, C.A.D. 922 (1967), relating to the sufficiency of proofs as to chief use of a slush molding machine.

In its analysis of the testimony, the court below found that:

> There is no evidence to show what Mr. Belliveau's employment was in 1957, although he did say that prior to purchase of the imported machine he investigated, in Montreal and in five "plants" in the United States, the British Rubber Company slush molding machines. He also "contacted several other corporations and companies" to discuss the slush molding process with them.

> He further said that a technician from British Rubber Company came to the Malden plant (of Converse) and, with the aid of Converse's mechanics, rebuilt the imported machine under his supervision and set it up for eventual production. This obviously relates to some post-importation date.

It is the machine as imported and on the date of its importation, that will determine classification. We have little or no evidence that speaks persuasively to that issue.

The record reflects, and in fact appellant admits, that the molds are an integral part of the molding machinery. Failure to show chief use of the machine, in legal contemplation, as shoe machinery would control the decision as to the molds.

Therefore, the sole issue here is whether the Customs Court properly held that appellant had failed to establish that the imported slush molding machine and molds therefor were shoe machinery and parts properly classifiable under the provisions of paragraph 1643 of the Tariff Act of 1930, as modified.

■ It has long been well settled that the classification by the collector and his official acts are presumed to be correct and that the collector is presumed to have found every fact to exist that is necessary to sustain his classification. McKesson & Robbins, Inc. v. United States, 27 CCPA 157, C.A.D. 77 (1939); E. I. duPont de Nemours & Co. v. United States, 27 CCPA 146, C.A.D. 75 (1939). Since chief use of the imported slush molding machine as shoe machinery would require classification in paragraph 1643, and not paragraph 353 as the collector determined, one of the facts the collector presumably found is that the imported machine is not chiefly used as shoe machinery. To this fact the presumption of correctness attaches.

■ While it may be conceded that the merchandise in issue made articles which would be considered "shoes" for tariff purposes, in order to prevail in its claim for classification under paragraph 1643 of the Tariff Act of 1930 it is incumbent upon appellant to establish that, at or immediately prior to the date of importation, merchandise of the type

imported was chiefly used in a shoe manufacturing operation.

In our view, the rationale applied by this court in the *Dillingham* case, relied on by the Customs Court, and hereinabove adverted to, has application here. In *Dillingham* the court stated:

* * * we conclude that the classification of the instant merchandise requires a consideration of use because the statute employed a term, "shoe machinery," which imputes a use.

* * * * * *

We find the testimony of Mr. Bara is without substantial probative value with respect to the question of chief use. For all we know, the imported machinery may be used in any manufacturing operation where molding is one step. Cf. Louis G. Freeman Co. v. United States, 58 Treas. Dec. 1060, Abstract 13580, where certain "leather-splitting machines" were deprived of the benefit of free entry as shoe machinery since the machines could be used in any factory where splitting leather was needed for any purpose, including the manufacture of shoes.

The fact that the imported article is being used in the manufacture of shoes is insufficient to establish chief use.

Our evaluation of the record and consideration of the briefs and arguments of counsel do not convince us that the proofs submitted by appellant measure up to the standard of proof required by established precedent. When chief use is in dispute, as it is in this case, it is usually a question of fact which should be established on the basis of positive testimony representative of an adequate geographical cross-section of the nation. L. Tobert Co. v. United States, 41 CCPA 161, 164, C.A.D. 544 (1953). The only testimony in this regard is the statement of appellant's witness that the plants he visited used molding machines of the same general type as that imported for manufacturing footwear, and that he was not apprised whether these concerns used their machines to produce anything other than shoes. This testimony alone clearly does not meet the standard of proof required. Likewise, we find the testimony regarding the use of the particular molding machine appellant imported insufficient proof of chief use. Chief use envisions use by users, as a whole, of the type of commodity involved, and not merely individual use of the particular shipment in question. United States v. Spreckles Creameries, Inc., 17 CCPA 400, 402, T. D. 43835 (1930).

The judgment of the Customs Court is, accordingly, affirmed.

Affirmed.