ALEXANDRIA INTERNATIONAL, INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 86–05–00575

## Opinion

(Decided August 31, 1989)

*Barnes, Richardson & Colburn (Leonard Lehman* and *Melvin E. Lazar)* for plaintiff.

*Stuart E. Schiffer,* Acting Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, *(Nancy M. Frieden)* Civil Division, U.S. Department of Justice, for defendant.

## Background

MUSGRAVE, *Judge:* Plaintiff Alexandria, an importer of the product in question here, challenges the classification of its product by the Customs Service as "sardines" rather than "anchovies". The Court has before it the somewhat anomalous situation in which the plaintiff identifies its products as *sardines,* but insists that they are *anchovies,* while defendant stipulates that the products are *anchovies* but argues that they must be classified as *sardines.* The parties have submitted the case on a Stipulation of Facts in lieu of trial.

According to the parties' Stipulation,

the items at issue, imported from Yugoslavia, are labelled, advertised, bought, sold and marketed as "cocktail" or "small" sardines with the following trademarked brand name:

Fisherman's Harvest

\*        \*        \*        \*        \*        \*        \*

## COCKTAIL SARDINES

In addition, the stipulation shows that the statement of contents corresponds to the above description:

The ingredients statement contained on the packaging in which the imported articles are sold by plaintiff to its customers, and eventually to the ultimate consumer, reads as follows:

## INGREDIENTS; SMALL SARDINES, SOYBEAN OIL, VINEGAR \* \* \* SALT

The merchandise is described on the accompanying commercial invoices as "Fisherman's Harvest Brand Sardines (like smoked anchovy style)." These stipulations accurately describe several samples of the product provided to the Court as evidence.

In accordance with the foregoing circumstances, the Customs Service classified and liquidated the plaintiff's product under item 112.82 of the Tariff Schedules of the United States as follows:

Fish, prepared or preserved in any manner, in oil, in airtight containers:

\*        \*        \*        \*        \*        \*        \*

Sardines:

\*    \*    \*    \*    \*    \*    \*

Valued over 30 cents per pound (including weight of immediate container):

Neither skinned nor boned:

\*    \*    \*    \*    \*    \*    \*

112.82              Not smoked ............. 15% ad valorem.

Notwithstanding these facts, the plaintiff asserts that its product should instead be classified as "anchovies" under the Tariff Schedules, as follows:

Fish, prepared or preserved, in any manner, in oil, in airtight containers:

112.40       . Anchovies .......... Free (A)
                               (Under the Generalized System
                               of Preferences)

The principal significance of the distinction is that sardines are subject to a 15% import duty, while anchovies from Yugoslavia are exempt from such duties under the Generalized System of Preferences.

The parties have stipulated that the items are indeed anchovies within the scientific meaning of that term:

12. Scientifically, anchovies are not sardines and the scientific differences have been recognized since 1817.

13. The merchandise involved herein is scientifically identifiable as anchovies of the Genus *Engraulus,* within the family *Engraulidae.*

While these stipulations seemingly contradict the government's argument that the items were properly classified as "sardines" rather than "anchovies", the government contends that the scientific meanings of these two terms differ from their meanings in common and commercial usage; that in common and commercial usage, the particular type of anchovies at issue here are considered sardines; and that this Court should therefore sustain as correct the Customs Services' classification.

The issue in this case is whether items which are scientifically classifiable as anchovies, but which were labelled, imported, marketed, bought and sold as sardines, are properly classifiable for Customs purposes as anchovies or as sardines.

### DISCUSSION

The decisions of the Customs Service regarding classification of imported items are presumed to be correct, and the party challenging such a classification bears the burden of proving otherwise. 28 U.S.C. § 2639(a)(1). *See Stewart-Warner Corp.* v. *United States,* 748

F.2d 683 (Fed. Cir. 1984); *Schott Optical Glass, Inc.* v. *United States,* 82 Cust. Ct. 11, C.D. 4783, 468 F. Supp. 1318 (1979); *Schott Optical Glass, Inc.* v. *United States,* 11 CIT 899, Slip Op. 87–132 (7 Dec. 1987). This presumption of correctness applies not only to the Service's ultimate classification decision, but also to every subsidiary fact necessary to support that decision, *United States* v. *New York Merchandise Co.,* 58 CCPA 53, C.A.D. 1004, 435 F.2d 1315 (1970); *Schott Optical Glass, Inc.* v. *United States,* 82 Cust. Ct. 11, 4783, 468 F. Supp. 1318 (1979). The Service is presumed as a matter of law to have found the existence of every fact necessary to support a classification decision. *W.A. Gleeson* v. *United States,* 58 CCPA 17, C.A.D. 998, 432 F.2d 1403 (1970); *Novelty Import Co.* v. *United States,* 53 CCPA 28, C.A.D. 872 (1966); *F.H. Kaysing, Inc.* v. *United States,* 49 CCPA 69, C.A.D. 798 (1962). This presumption, then, determines the importer's burden of proof: to overcome the presumption, the importer must prove that the Service's classification is wrong.

In the present case, Alexandria asserts that the scientific meanings of the words "anchovies" and "sardines" are the same as the common meanings of these terms as used in the Tariff Schedules; and that this being the case, the government's stipulation that the imported merchandise is anchovies within the scientific meaning of this term requires that the items be classified as anchovies for customs purposes. The attractiveness of this syllogistic argument is self-evident; however the major premise is subject to doubt by reason of the rules of construction of customs terminology, the trade usage in this product area, and the marketing procedures employed with regard to the particular items involved here.

As a general rule, the classification terms used in the tariff schedules are construed in accordance with their common and commercial meanings, which meanings are presumed to be the same. *United States* v. *Victoria Gin Co.,* 48 CCPA 33, C.A.D. 759 (1960); *Nippon Kogaku (USA), Inc.* v. *United States,* 69 CCPA 89, Appeal No. 81–29, 673 F.2d 380 (1982). It is well established that where the scientific meaning of a tariff term differs from the term's common or commercial meaning, the term is not to be construed according to the scientific meaning, absent a contrary intent by Congress in using the term. In 1824 Mr. Justice Storey wrote:

> The object of the duty laws is to raise revenue, and for this purpose to class substances according to the general usage and known denominations of trade.
>
> \*     \*     \*     \*     \*     \*     \*
>
> [Congress] did not suppose our merchants to be naturalists, or geologists, or botanists. It applied its attention to the description of articles as they derived their appellations in our own markets, in our domestic as well as our foreign traffic. And it would have been as dangerous as useless, to attempt any other classification than that derived from the actual business of human life.

*Two Hundred Chests of Tea,* 9 Wheat. 430, 438, 6 L.Ed. 128, 130 (1824).

The Court of Customs Appeals wrote in 1915 that "tariff acts are drafted not in the terms of science, but in the language of commerce, which is presumptively that in common use * * *" *Meyer & Lange* v. *United States,* 6 Ct. Cust. Appls. 181 (1911).

In the present case, the parties have stipulated that the items at issue fall within the scientific meaning of the term "anchovies". The question, then, is whether this scientific meaning corresponds with the common and commercial meanings of "anchovies", so as to indicate that the items are properly classifiable as such. The taxonomic schema for classifying organisms, abridged to fit the present controversy, consists of the following categories, in descending order from the broadest to the most specific: Kingdom, Phylum, Class, Subclass Order, Suborder, Family, Genus, and Species. *See 18 McGraw-Hill Encyclopedia of Science & Technology* 137 (1987). The parties have stipulated, and recount in their briefs, that anchovies fall within the family *Engraulidae,* while sardines are classified in the family *Clupeidae.* More broadly, the Court notes that both anchovies and sardines fall within the class *Actinopterygii,* the subclass *Teleostei,* the order *Clupeiformes* and the suborder *Clupeoidei. See 19 The New Encyclopaedia Britannica* 201–203, 230 (15th ed. 1986); *Van Nostrand's Scientific Encyclopedia* 1193–97 (6th ed. 1983). Thus, the divergence between anchovies and sardines comes at the Family stage, rather late in the taxonomic progression. Moreover, there apparently exists some disagreement among scientific authorities on many aspects of classification of the *Clupeiformes* order. *See 19 Encyclopaedia Britannica, supra,* at 226.

Nevertheless, as the parties have agreed upon the existence of a scientific distinction between anchovies and sardines, the Court accepts this distinction as established. The question remains, however, as to the significance of the distinction, for the plaintiff must show that the scientific meanings of these two terms are the same as their common and commercial meanings, *i.e.* that the distinction between the families *Engraulidae* and *Clupeidae* forms a basis upon which sardines and anchovies are distinguished in common parlance and commerce.

In support of its contention that the scientific meanings of "anchovies" and "sardines" are the same as the common and commercial meanings, the plaintiff offers excerpts from several dictionaries. For example, it offers the following from the *Random House* definitions of "anchovy":

> * * * any small, marine, herring like fish of the family *Engraulidae* * * * often preserved in oil and used in salads, spreads, etc. * * *.

and of "sardine":

> * * * 2. Any of various similar, closely related fishes of the herring family *Clupeidae* * * *.

Plaintiff also quotes from the *Webster's* definitions of "anchovy":

> * * * any of a number of small herring like fishes (family *Engraulidae*); * * *.

and of "sardine":

> * * * any of several small or immature *Clupeidae* fishes. * * *

In addition to these lexicographic sources, plaintiff offers similar excerpts from the *Summaries of Tariff Information* of 1929 and 1948. It also cites portions of the F.D.A.'s *Requirements of Laws and Regulations Enforced by the U.S. Food and Drug Administration.* Page 29 of these *Requirements* contains the following statement concerning anchovies:

> *Anchovies.* Products represented as anchovies should consist of fish of the family *Engraulidae.* Other small fish, such as small herring and herring-like fish which may superificially resemble anchovies cannot properly be labelled as anchovies.
>
> \*         \*         \*         \*         \*         \*         \*

and also this statement regarding sardines:

> *Sardines.* The term "sardines" is permitted in the labelling of the canned products prepared from small-size *Clupeoid* fish
>
> \*         \*         \*         \*         \*         \*         \*

Plaintiff concludes that because these sources use the *Engraulidae-Clupeidae* framework, this framework constitutes the basis for distinguishing between anchovies and sardines in commerce and common usage. In response to plaintiff's lexicographic citations, the government presents authorities of its own to support its contention that in the common and commercial usage controlling for customs purposes, the term "sardines" includes merchandise of the kind at issue here. A more extensive excerpt from *Webster's* definition of "sardine" than that provided by plaintiff reads as follows:

> **sardine** * * * **1a:** any of several small or immature clupeid fishes: (1): the young of the European pilchard (*Sardinia pilchardus*) when of a size suitable for preserving for food (2): any of various similar young of closely related fishes (as *Sardinops caerulea* of the Pacific coast of No. America, Sardinella anchovia of the tropical Atlantic and Caribbean area or *Sardinia neopilchardus* of Australia and New Zealand) (3): *any of various small or immature herrings that resemble or are used similarly to the true sardines*—compare Brisling, Sild **b:** a similar but more distantly related fish (*as an anchovy*)—not used technically and in some jurisdictions not legally acceptable without a qualifying term * * *

(Emphasis added). *Webster's Third New International Dictionary* (1981).

This definition includes within the meaning of "sardine" both "small or immature herrings" that "resemble or are used similarly to" true sardines, and other fish "(as an anchovy)" that are similar to true sardines, even if "more distantly related".

Because the controlling meaning of a descriptive tariff term is the meaning which was accepted at the time the particular provision(s) were enacted, *Goldsmith's Sons* v. *United States,* 13 Ct. Cust. App 69 (1925); *United States* v. *Belgam Corp.,* 22 CCPA 402 (1934), more weight should be given to definitional sources existing closer to that time. The 1954 edition of *Webster's* contains a definition of "sardine" similar in most respects to the one contained in the 1981 edition:

> **sardine,** n. **1.** The young of pilchard (*Sardinia pilchardus*) when of a size suitable for preserving in oil or tomato sauce for food; also, *any of certain closely related and similar species.* The *true* sardine occurs only in European waters, but others are found in America, as *S. caerulea* of the Pacific coast and *S. anchovia* of the West Indies. **2.** *Any of the various small or immature fishes resembling the true sardines or similarly preserved for food;* as: **a** In the eastern United States, the young of the common herring or of the menhaden. **b** In North Carolina, *an anchovy (Anchoviella epsetus).*

(Emphasis added).

Thus, in this earlier source also there are included within the sardine category, along with "true" sardines, other "closely related and similar species", and other fishes which are "small or immature", "resembling the true sardines or similary preserved for food", including, some cases, "an anchovy". In the 1956 edition of *Funk & Wagnall's New Standard Dictionary of the English Language,* "sardine" is similarly defined as,

> 1. One of the various small clupeioid fishes *preserved in oil * * ***
>
> 2. The young of herring, menhaden or some like fish *similarly prepared.*
>
> 3. [Local, U.S.] * * *
>
>     (2) *An anchovy * * ***

(Emphasis added).

The 1963 edition of the *Columbia Encyclopedia* (3d Ed. 1963) does not define "anchovy" and "sardine" separately, but instead groups them both under the entry for *herring.* This source, moreover, states,

> The name sardine is also applied to various small fish packed with oil or sauce in flat cans * * *

*Id.* at 943.

The government derives from these sources its asserted common meaning of "sardine" as a category of fish which includes, in addition to "true" sardines, a wide variety of fishes that are similar or related to true sardines, including herring-like fishes such as anchovies, and especially these types of fishes when they are prepared or preserved as food in oils or sauces, and packaged in small flat cans.

The sources cited by the government are persuasive support for the common meaning of "sardine" used by Customs in the present classification.

Regarding the *Summaries of Tariff Information,* cited by both parties, the Court here notes and adheres to prior opinions of this and preceding courts discounting the value of this source in interpreting the language of the tariff acts. In *Volkswagen of America, Inc.* v. *United States,* 68 Cust. Ct. 122. C.D. 4348, 340 F. Supp. 983 (1972), the Customs Court, per Judges Watson, Maletz, and Re, wrote,

> The Summaries of Tariff Information are of no use as a guide to the scope of provisions or legislative intent in *prior* tariff acts.

*Id.* at 128, 340 F. Supp. at 987 (emphasis in original).[1]

In the instant case, plaintiff refers to the 1948 *Summary* in interpreting the 1930 Tariff Act, and to the 1929 *Summary* in interpreting the 1922 Tariff Act. Under the cases mentioned above, these references to *Summaries* published *subsequent* to the respective tariff acts, and by non-legislative authorities, can not change any conclusions reached in this case by reliance on other sources.

Finally, plaintiff's reference to the *F.D.A. Requirements* is not persuasive. With regard to anchovies, these *Requirements* state only that products represented as anchovies should consist of fish from the *Engraulidae* family. This provision says nothing about what may be represented as *sardines,* nor about other ways in which anchovies may be represented; it only establishes a requirement for products represented as *anchovies,* thus excluding the merchandise at issue here. Moreover, regarding sardines, the *Requirements* merely state that the term "sardine" is *permitted* to be used in the labelling of *canned* products *prepared from* the *Clupeioid* family, not that this label may *only* be used for fish from this family. In any event, the value for interpreting the tariff acts of "requirements" for use in interpreting FDA statutes is questionable. The *Requirements* themselves in the Foreword state,

> This publication does not take the place of either the law or regulations [administered by the F.D.A.]. Rather, it aims to be a useful cross-reference to their major requirements, by summarizing all statutes now administered by FDA. It is intended

---

[1]*See also Schott Optical Glass, Inc.* v. *United States,* 82 Cust. Ct. 11, C.D. 4783, 468 F. Supp. 1318 (1979).

mainly as an aid to understanding the Federal Food, Drug, and Cosmetic Act of 1938, as amended.

As with the *Summaries of Tariff Information,* the *FDA Requirements* can not alter conclusions reached upon the basis of other, more appropriate sources.

Under *Jarvis Clark Co.,* 733 F.2d 873 (Fed. Cir. 1984), this Court, in classification cases, not only must decide the correctness of the plaintiff's proposed classification, but also must decide the correctness of the government's classification, "both independently and in comparison with the importer's alternative." *Id.* at 878. The Court in *Jarvis* stated further,

> The importer still has the burden of establishing that the government's classification is wrong. Ordinarily it will be difficult to meet this burden of proof without proposing a better classification. But the trial court cannot determine the correct result simply by dismissing the importer's alternative as incorrect.

It is clear from this, and the Court of Appeals there recognized, that *Jarvis* does not displace the presumptions of correctness in favor of the government's classification; rather, it requires a finding that, for some reason other than the insufficiency of plaintiff's alternative classification, the presumption of correctness is justified in this particular case. As noted, *supra,* Customs' classification decisions, including all subsidiary supporting findings necessary thereto, are presumed to be correct unless the plaintiff proves that they are wrong.

There is ample evidence supporting the government's classification of the merchandise in this case. The authorities referred to herein convincingly establish a common and commercial meaning of the term "sardine" which includes the plaintiff's product. The common meaning of a tariff term is not a question of fact but a question of law to be decided by the Court. *United States* v. *Florea & Co.,* 25 CCPA 292 (1938); *United States* v. *National Carloading Corp.,* 48 CCPA 70, C.A.D. 767 (1961). This Court finds that for purposes of classifying plaintiff's product, the common meaning of "sardine" is that claimed by the government.

Moreover, the commercial meaning of a tariff term, controlling for classification purposes, is presumed to be the same as its common meaning, absent proof to the contrary. *See Meyer & Lange* v. *United States, supra.* The plaintiff in this case, far from proving a commercial meaning of "sardine" different from the government's asserted common meaning, has in fact *adopted* this common meaning in its commercial practices of labelling, marketing, and selling this merchandise, uniformly, as "sardines".

The plaintiff argues that classification of its products as sardines would render meaningless the tariff term "anchovies". But this is a *non-sequitur.* While expressing no formal opinion on the matter, the

Court notes that at least one possible application of this term in tariff usage could be for imported merchandise *labelled and marketed* as "anchovies". The present merchandise falls within the common and commercial meanings of "sardine". For whatever reason, the plaintiff chose to label and market the merchandise as "sardines". It would therefore defy logic for the Court to now reclassify the merchandise as "anchovies".

### Conclusion

A common and commercial meaning of "sardine" that includes the product at issue having been established, and the plaintiff by its own business practices having manifested an acceptance of this meaning the classification of plaintiff's product by the Customs Service, in reliance on this meaning, as "sardines" is hereby upheld.